UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SETH J. OKUN,

    Plaintiff,

v.                                                             CASE NO.: 8:11-cv-1162-T-23EAJ

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, et al.,

    Defendants.
                                                 /

## **ORDER**

Seth J. Okun, D.P.M., sues (Doc. 2) Provident Life and Accident Insurance Company ("Provident") and the Paul Revere Life Insurance Company ("Paul Revere") for failing to pay Okun "total disability" benefits after Okun developed an eye condition. Provident and Paul Revere move (Doc. 6) to dismiss six of the twelve counts in the complaint, and Okun responds. (Doc. 9)

### BACKGROUND

Okun was a podiatric surgeon. In 1985, Okun purchased a disability insurance policy from Provident that insured Okun against an inability to practice podiatric medicine. Also in 1985, Provident sent Okun two letters that clarify the meaning of "total disability" in Okun's insurance policies. See (Doc. 2, Exs. A, B) The first letter states in part:

> The policy defines total disability as meaning your inability to perform the duties of your occupation. Your occupation is the occupation in which you are regularly engaged at the time you become disabled.

The second letter contains a nearly identical statement and adds that Okun, if a podiatric surgeon at the time disability strikes, would receive total disability benefits for a disability that inhibits the performance of the "usual and customary surgical duties" of a specialist in podiatric medicine.

In 1990 Provident issued Okun a policy that replaced the earlier policy, and in 1990 and in 1993 Okun purchased additional disability insurance from Provident and Paul Revere. (Okun attaches to the complaint one Provident policy, Exhibit C, which includes both a sentence nearly identical to that quoted above from the 1985 letter and a fragment of two Paul Revere policies, Exhibits D and E.)

In July, 2007, Okun began a leave of absence from podiatric medicine and, during the leave of absence, again queried Provident and Paul Revere:

> To effect his leave of absence, Dr. Okun and his business partners negotiated a Buyout Agreement, which . . . provided [Okun] with an initial cash payment and continuing monthly income for a three (3) year period.
> . . . .
> Dr. Okun was free to resume his day-to-day practice as a Podiatric Surgeon after three (3) years.
> . . . .
> In March 2008, and again in June 2009 ( . . . during Dr. Okun's leave of absence . . . ), Dr. Okun [] sought clarification from [Provident and Paul Revere] representatives regarding the scope of his disability insurance coverage during [Okun's] leave of absence. In response to his inquiry, [Provident and Paul Revere] again assured Dr. Okun that although he was not actively employed in his established occupation on a day-to-day basis, the Policies would nevertheless afford him coverage in the event of a "Total Disability" that otherwise rendered him unable to perform those duties required of a Podiatric Surgeon.
> . . . .

- 2 -

> In reliance upon [Provident and Paul Revere's] renewed representations and assurances, Dr. Okun continued to renew the Policies during his leave of absence and he paid substantial premiums that corresponded with his income level as a Podiatric Surgeon.

(Doc. 2 ¶¶ 33-37) The complaint's claim that Provident and Paul Revere "again" assured Okun and "renewed" assurances to Okun about the scope of coverage suggests that Provident and Paul Revere's statements were similar to those in the 1985 letters (i.e., "[y]our occupation is the occupation in which you are regularly engaged at the time you become disabled"), but Okun provides no exhibit or further detail that elaborates the content of the 2008 and 2009 communications.

In September, 2009, during Okun's leave of absence, Okun's eyesight began to deteriorate. Two doctors diagnosed Okun as suffering a "vitreous floater" in one eye and "posterior vitreous detachment" in the other.[*] Pronouncing a total disability to perform as a podiatric surgeon, Okun submitted a claim to Provident and Paul Revere.

A March 2, 2010, letter from Unum (which acquired Provident and Paul Revere) denies Okun's claim. (Doc. 2, Ex. F) In a section titled "Information That Supports Our Decision," the letter states:

---

[*] Most of the eye's interior is filled with vitreous, a gel-like substance that helps the eye maintain a round shape. There are millions of fine fibers intertwined within the vitreous that are attached to the surface of the retina, the eye's light-sensitive tissue. As we age, the vitreous slowly shrinks, and these fibers pull on the retinal surface. Usually the fibers break, allowing the vitreous to separate and shrink from the retina. This is a vetreous detachment [also known as a posterior vitreous detachment].

Facts About Vitreous Detachment, National Eye Institute, http://www.nei.nih.gov/health/vitreous/vitreous.asp (accessed August 24, 2011). "As the vitreous shrinks, it becomes somewhat stringy, and the strands can cast tiny shadows on the retina. These are floaters." Facts About Floaters, National Eye Institute, http://www.nei.nhi.gov/health/floaters/floaters.asp (accessed August, 24, 2011).

- 3 -

> Based on information contained in your claim file, your decision not to work [as a podiatrist] is due to the choice you made when you sold your practice in 2007, [not] a medical condition. You are attending school and recently became a certified financial planner.

(Doc. 2, Ex. F) In addition, the letter notes that a doctor found that Okun's eye condition caused no restriction and that Okun would recover in approximately three months. According to the letter, another doctor informed Okun that the eye condition is not a disability and is "readily operable"; the doctor "stated that he felt somewhat uncomfortable filling out a disability form." (Doc. 2, Ex. F)

Okun appealed the claim denial. An August 12, 2010, letter repeats the doctors' findings that Okun is not unable to perform as a podiatrist, notes that in any event Okun's medical license was inactive when Okun's eye condition arose, and denies the appeal. (Doc. 1, Ex. G) After the denial of the appeal, Okun sent Provident and Paul Revere a letter from an ophthalmologist who found Okun unable to perform surgery due to the eye condition. In a December 9, 2010, response, Provident and Paul Revere maintain the position expounded in both the initial denial and the appeal denial and add that Okun, even if unable to perform surgery, is not totally disabled as a podiatrist. (Doc. 1, Ex. H)

## DISCUSSION

Okun sues Provident and Paul Revere for breach of contract, for breach of the duty of good faith and fair dealing, and for statutory bad faith. Also, Okun seeks a declaratory judgment, a reformation of the insurance policies because of a mutual mistake, and promissory estoppel based on Provident and Paul Revere's representation of the scope of each insurance policy. Provident and Paul Revere contend that Okun

fails to state a claim for promissory estoppel, for reformation, for breach of the duty of good faith and fair dealing, and for statutory bad faith.

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Labels and conclusions alone are insufficient. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

### 1. Promissory Estoppel

According to the complaint, Provident and Paul Revere assured Okun that a leave of absence would not curtail Okun's eligibility to claim "total disability" as a podiatric surgeon. Okun asserts that under promissory estoppel Provident and Paul Revere must honor the alleged representation of each insurance policy's scope of coverage.

Promissory estoppel requires that a plaintiff reasonably and detrimentally rely on a defendant's representation. See Romo v. Amedex Ins. Co., 930 So.2d 643, 646-50 (Fla. 3d DCA 2006); Restatement (Second) of Contracts § 90 (1981); see also Ricketts v. Scothorn, 77 N.W. 365 (Neb. 1898). If necessary to avoid "fraud or other injustice," promissory estoppel can expand insurance coverage beyond the terms of a written insurance policy. Crown Life Ins. Co. v. McBride, 517 So.2d 660, 662 (Fla. 1987). Okun alleges that in March, 2008, and in June, 2009, Provident and Paul Revere promised that Okun could claim a total disability as a podiatric surgeon while on a leave of absence from podiatric medicine, and Okun alleges that he relied to his detriment on Provident and Paul Revere's promise because the promise prevented Okun's switching to an insurance company offering the desired coverage.

- 5 -

Provident and Paul Revere object that Okun cannot assert promissory estoppel, an equitable remedy, because each insurance policy affords Okun a legal remedy. See McNorton v. Pan Am. Bank of Orlando, N.A., 387 So.2d 393 (Fla. 5th DCA 1980). In addition, Provident and Paul Revere invoke the rule that "any reliance on an oral promise that contradict[s] the terms of the parties' written agreement is unreasonable." Fin. Healthcare Assoc., Inc. v. Pub. Health Trust of Miami-Dade Cnty., 488 F.Supp.2d 1231, 1240 (S.D. Fla. 2007) (Seitz, J.). However, factual development is necessary to determine the scope of Okun's insurance policies and to determine whether Okun's remedy at law is adequate. Cf. Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc., 982 F.Supp. 873, 880 (S.D. Fla. 1997) (Highsmith, J.) ("only upon a showing that an express contract exists [does a] promissory estoppel count fail[]"). Provident and Paul Revere attempt to block further investigation into the parties' extra-contractual communication by citing a merger clause in each insurance policy that requires a change to the policy to attach to the policy in writing. Unfortunately for Provident and Paul Revere, insurance policy merger clauses fail to impress Florida courts. See Prudential Ins. Co. of Am. v. Clark, 456 F.2d 932, 937 (5th Cir. 1972); Romo, 930 So.2d at 649-50; see also MeterLogic, Inc. v. Copier Solutions, Inc., 126 F.Supp.2d 1346, 1362-63 (S.D. Fla. 2000) (Gold, J.); Goodall v. Whispering Woods Ctr., LLC, 990 So.2d 695, 700 (Fla. 4th DCA 2008); Mejia v. Jurich, 781 So.2d 1175, 1178 (Fla. 3d DCA 2001). In any event, at this stage Okun may assert a legal claim for breach of contract and an equitable claim for promissory estoppel in the alternative. Cf. Romo, 930 So.2d at 646-50.

Okun will soon face the arduous task of attempting to justify promissory estoppel by clear and convincing evidence, the governing standard in the context of expanding insurance coverage. Prof'l Underwriters Ins. Co. v. Freyetes & Sons Corp., Inc., 565 So.2d 900, 902 (Fla. 5th DCA 1990). Although certainly inadequate under that standard, the complaint coherently alleges grounds for promissory estoppel in a sufficiently plausible manner to survive the motion to dismiss.

## 2. Reformation

Okun alleges that Provident and Paul Revere knew from the moment Okun purchased each insurance policy that each policy insures Okun against a total disability to perform podiatric surgery even if Okun is not an active podiatric surgeon at the inception of the total disability. (Doc. 2, ¶ 66) Okun posits that "[t]o the extent that the written terms in the [insurance policies] do not accurately reflect the Parties' intended Coverage Agreement, said terms constitute a 'mutual mistake' between the Parties." (Doc. 2, ¶ 68) Okun requests a reformation of each insurance policy to embody the "true" agreement. Provident and Paul Revere respond that Okun's allegation of mistake is conclusory and that reformation is barred by laches.

If an insured and an insurer by mutual mistake agree to an insurance policy that fails to embody the insured and the insurer's actual agreement, a reformation of the policy into alignment with the actual agreement is appropriate. See, e.g., Goodall, 990 So.2d at 699; Kolski v. Kolski, 731 So.2d 169, 173 (Fla. 3d DCA 1999). If an extended time passes before a plaintiff questions the policy, the burden rests on the plaintiff to

demonstrate that the "true" contract differs from the written contract.  <u>Samet v. Prudential Ins. Co. Of America</u>, 294 So.2d 35, 36 (Fla. 3d DCA 1974).

By attaching the 1985 letters to the complaint, Okun nearly sabotages the claim for reformation.  <u>Cf.</u> <u>Am. Nurses' Assoc. v. Illinois</u>, 783 F.2d 716, 727 (7th Cir. 1986).  The first letter states that a "total disability" applies to the occupation "regularly engaged [in] at the time you become disabled."  (Doc. 2, Ex. A)  This language is identical to the language in the insurance policy attached to the complaint.  <u>See</u> (Doc. 1, Ex. C at 4)  The second letter states that a "total disability" is an inability to perform "the duties of your established occupation immediately prior to disability."  (Doc. 2, Ex. B)  Okun alleges no specific statement by Provident or Paul Revere other than the letters, and the letters cannot alter the insurance policy if the letters are not meaningfully different from the insurance policy.

Nevertheless, Okun alleges enough for the reformation claim to survive.  Provident and Paul Revere allegedly informed Okun in 2008 and in 2009 that Okun could claim total disability as a podiatric surgeon while inactive as a podiatric surgeon.  <u>Cf.</u> <u>Romo</u>, 930 So.2d at 646-50; <u>Goodall</u>, 990 So.2d at 699-701.  The complaint implies that Provident and Paul Revere's 2008 and 2009 statements to Okun are similar to the 1985 letters, but Okun is at this stage entitled to a presumption of dissimilarity (Okun never establishes the precise content of the 2008 and 2009 communications).

Provident and Paul Revere argue that laches bars Okun from pursuing a reformation based on a mutual mistake.  Okun counters that he repeatedly sought clarification from Provident "but [that Provident's] representations merely perpetuated Dr. Okun's understanding of the coverage."  (Doc. 9 at 15)  If Okun refers to the 1985

- 8 -

letters alone, Provident and Paul Revere's laches argument is strong, but the laches dispute requires more factual development than appears at this stage.  See Francis v. State, 31 So.3d 285 (Fla. 4th DCA 2010).

### 3. Good Faith and Fair Dealing and Statutory Bad Faith

The allegations supporting the claims for breach of the duty of good faith and fair dealing are a subset of the allegations supporting the claim for statutory bad faith under Sections 624.155 and 626.9541, Florida Statutes.  Each good faith and fair dealing claim alleges that Provident and Paul Revere refused to adequately investigate Okun's insurance claim and unilaterally reduced Okun's coverage.  (Doc. 2, ¶¶ 120, 125, 130) The statutory bad faith claim includes the same allegations (among many others). (Doc. 2, ¶ 150)

Okun acknowledges that a statutory bad faith claim is premature before a finding of liability and a finding of damages owed for a breach of the insurance policy.  See Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla. 1991).  In consequence, the statutory bad faith claim is abated pending adjudication of Okun's claims for breach of contract.  See O'Rourke v. Provident Life and Acc. Ins. Co., 48 F.Supp.2d 1383 (S.D. Fla. 1999) (Moore, J.); Lexington Ins. Co. v. Royal Ins. Co. of Am., 886 F.Supp. 837, 840-42 (N.D. Fla. 1995) (Vinson, J.).

The Eleventh Circuit certified to the Supreme Court of Florida the question whether an insured may pursue a common law good faith and fair dealing claim separately from a statutory bad faith claim.  Chalfonte Condo. Apt. Ass'n, Inc. v. QBE Ins. Corp., 561 F.3d 1267, 1270-72 (11th Cir. 2009).  Oral argument in QBE Ins. Corp. v. Chalfonte Condo. Apt. Assoc., Inc., SC09-441 (Fla.), occurred in March, 2010.

Okun's good faith and fair dealing claims are abated pending either a decision from the Florida Supreme Court in <u>Chalfonte</u> or an adjudication of Okun's claims for breach of contract.

## CONCLUSION

Provident and Paul Revere's motion (Doc. 6) to dismiss is **DENIED**. Further proceedings for the statutory bad faith claim and each good faith and fair dealing claim are **ABATED**.

ORDERED in Tampa, Florida, on August 26, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE